```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
```

UNITED STATES OF AMERICA,       §
                                §
           Plaintiff,            §
                                §
VS.                             §   Criminal No. 3:95-CR-301-D
                                §
JUAN B. AVELAR,                 §
                                §
           Defendant.            §

```
                    MEMORANDUM OPINION
                        AND ORDER
```

Defendant Juan B. Avelar ("Avelar") moves to suppress as fruit of the poisonous tree the seizure of 40 kilos of cocaine.[1] After conducting an evidentiary hearing, and for the reasons that follow,[2] the court concludes that the law of the case doctrine does not preclude it from denying the motion, that Avelar lacks standing to assert a Fourth Amendment challenge, and that Border Patrol officials had reasonable suspicion to support the search of the tractor and car hauler being driven by codefendant Carlos Rivas ("Rivas"), which led to the later seizure, pursuant to a search warrant, of the cocaine. The court therefore denies the motion.

---

[1] Avelar does not actually argue in his motion that the seizure must be suppressed as poisonous fruit, but this is perforce his contention, because the cocaine in question was seized after a United States Magistrate Judge issued a search warrant. The probable cause that supported the search warrant, however, was derived from cocaine obtained through the warrantless border search that is at issue in this motion.

[2] The court sets forth in this memorandum opinion and order its essential findings. *See* Fed. R. Crim. P. 12(d).

I

On September 4, 1995 Rivas entered the United States through the Los Indios Port of Entry at Brownsville, Texas. He was driving a 1977 Kenworth tractor and towing an empty car hauler,[3] and he was the sole occupant of the vehicle. At the point of entry, Rivas was stopped by U.S. Customs officials, where he engaged in a short conversation with Officers Jose Lira ("Officer Lira") and Paul Gonzalez. Rivas told Officer Lira that he was on his way to San Antonio to purchase used vehicles. Officer Lira directed Rivas to the Immigration and Naturalization Service office to obtain an application for personal entry into the United States.

Prior to this encounter with Rivas, Officer Lira had been briefed as part of his official duties on the smuggling of narcotics and currency between Central and South America and the United States using commercial conveyances like Rivas' vehicle. Officer Lira was on the lookout for these forms of conveyance.

While Rivas was engaged at the immigration office, Officer Lira requested the assistance of a canine officer, Recardo Gutierrez ("Officer Gutierrez"), who examined private vehicles and commercial conveyances, in the inspection of Rivas' vehicle. As Officer Gutierrez and his drug-detection dog, Bridger, processed the tractor and car hauler, Bridger twice "alerted" by changing his

---

[3]According to Avelar's motion to suppress, Avelar had hired Rivas to drive the car hauler to Dallas. Avelar did not introduce any evidence, however, at the suppression hearing.

search pattern and behavior. He went up high, raising up on his hind legs. Bridger twice "cast" upward toward the upper beams of both sides of the car hauler, indicating that the odor of narcotics was falling from above. Officer Gutierrez testified that "casting" occurs after the canine "alerts," but before he "responds."

Bridger's conduct led Officer Gutierrez to believe there was an odor of narcotics available. He informed Officer Lira that the narcotics odor was up high. Officer Lira also observed what he considered to be unusual aspects of the car hauler and its support beams. He noticed that Union 76 stickers had been affixed upside-down (which officers refer to as "disclaimers"); that the car hauler had been freshly painted, including the hydraulic system's pistons (which are normally unpainted due to the need to operate freely); that there were several non-factory weld marks where some repair work had been done under the freshly painted surface of the car hauler; that the car hauler appeared to have additional support beams; and that there was an absence of the usual cavities in the beams that would permit access for visual inspection. When Officer Lira performed a sound test, it indicated that the beams, which should have been hollow and produced an echo, produced a dull sound and appeared to be solid.

Suspecting that the car hauler might contain contraband, Officer Lira drilled a small, approximately 1/8" hole in the upper beam on the driver's side of the car hauler, finding nothing

abnormal. He then drilled a similar small hole in the upper beam located on the passenger's side. When he withdrew the drill bit, there was a white powdery residue that field-tested positive as cocaine.

In consultation with supervisory personnel, the officers then formulated a plan for a "cold convoy," i.e., to covertly follow Rivas for purposes of a controlled delivery. Rivas was observed constantly as he made his way in the tractor and car hauler from Brownsville to a hotel located in Irving, Texas, and then to a small commercial building located in Dallas. After a search warrant was obtained from a United States Magistrate Judge, Dallas firefighters, Drug Enforcement Administration agents, and U.S. Customs officers seized and searched the tractor and car hauler, finding 40 kilos of cocaine hidden inside. Avelar, Rivas, and a third defendant, Douglas Ibarra ("Ibarra"), were arrested. Avelar was charged in a two-count indictment with conspiracy to possess and with the intent to distribute cocaine, and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

Prior to the 1995 trial of Rivas and Ibarra, Rivas filed a motion to suppress, which the court effectively denied without conducting an evidentiary hearing.[4] Avelar did not appear for

---

[4]On November 30, 1995 the court filed a memorandum opinion and order that addressed, but did not finally decide, Rivas' suppression motion, and set the motion for a hearing. Mem. Op. at

trial.[5]  After Rivas and Ibarra were tried and convicted, they appealed.  The Fifth Circuit affirmed Ibarra's conviction, but it reversed Rivas' conviction.  *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998), *reh'g denied*, 166 F.3d 747 (5th Cir. 1999) (per curiam).  The panel held that drilling into the body of the car hauler at the border checkpoint amounted to a non-routine search that must be supported by reasonable suspicion; that the government had not met its burden of establishing reasonable suspicion; and that the evidence seized in Dallas several days after the border search, although pursuant to a search warrant, must be suppressed as fruit of the poisonous tree.  *Id.* at 367-68.[6]

---

3.  The court focused on whether the subsequent search in Dallas qualified under the border search exception as an "extended border search."  *Id.* at 2-3.  In addressing the relevant factors, the court held that "[o]n the basis of the legal border search, law enforcement officials had a reasonable suspicion that Rivas was importing cocaine into the United States."  *Id.* at 3.  But "[b]ecause the factual record [was] insufficient to determine whether the second requirement for an extended border search ha[d] been met," the court stated that it would conduct a hearing.  *Id.*  This hearing never occurred.  *United States Rivas*, 157 F.3d 364, 366-67 (5th Cir. 1998), *reh'g denied*, 166 F.3d 747 (5th Cir. 1999) (per curiam).  The court also noted that "[a]lthough the court ha[d] focused its analysis [o]n the extended border search doctrine, the government may present at the hearing evidence in support of any alternative theories on which it relies to establish that Rivas' motion to suppress should be denied."  Mem. Op. at 3.

[5]This is the subject of a separate pending indictment in *United States v. Avelar*, No. 3:96-CR-073-D.

[6]In *Rivas* the panel referred to "defense counsel['s] properly object[ing] to [an] answer [from a witness] on the ground of hearsay."  *Rivas*, 157 F.3d at 368.  And during the evidentiary hearing on Avelar's suppression motion, this court stated that it would consider for limited, non-hearsay purposes only, certain

Avelar, who has now been apprehended, moves to suppress the seizure of the cocaine, arguing that this court is obligated to follow the reasoning of *Rivas* and grant his motion.  The government opposes the motion, contending that Avelar lacks standing to challenge the search of the tractor and car hauler at the border and, alternatively, that Officer Lira had reasonable suspicion based on articulable facts to support the search.  The court conducted an evidentiary hearing on July 19, 2007, at the beginning of which Avelar asserted orally that the court should grant his motion based on the doctrine of the law of the case.

II

The court addresses first Avelar's contention that the law of the case doctrine requires that the court suppress the evidence based on the Fifth Circuit's decision in *Rivas*.

Under the law of the case doctrine, "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998)

---

evidence that would be hearsay if offered for the truth of the matters asserted.  (Avelar's counsel stated that he did not object to the evidence if considered only for these limited purposes.)

The Rules of Evidence do not apply to a suppression hearing. *See* Fed. R. Evid. 104(a) and 1101(d)(1).  The *Rivas* panel referred to defense counsel's proper hearsay objection because the evidence was being offered during trial; this court did not conduct an evidentiary hearing on Rivas' motion to suppress. *Rivas*, 157 F.3d at 366-67.  The panel was therefore applying the Rules of Evidence in the context of a trial, where the Rules of Evidence apply.

(internal quotation marks omitted) (quoting *Ill. Cent. Gulf R.R. Co. v. Int'l Paper Co.*, 889 F.2d 536, 539 (5th Cir. 1989) (per curiam)), *abrogated on other grounds as recognized in United States v. Farias*, 481 F.3d 289, 291-92 (5th Cir. 2007). "The law of the case doctrine, however, is not inviolate." *Id.* "The doctrine has three exceptions," one of which applies when "[t]he evidence at a subsequent trial is substantially different." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (citing *Becerra*, 155 F.3d at 752-53).

Assuming *arguendo* that the doctrine could apply to Avelar's motion,[7] the court holds that it is inapposite. In *Rivas* the Fifth Circuit did not address whether Avelar—or any non-driver, non-passenger—had standing to contest the search of the tractor and car hauler that Rivas was driving. Accordingly, to the extent this court's decision today is based on lack of standing, *Rivas* does not control under the doctrine of the law of the case.

Moreover, as noted, "[t]here is an exception to the law of the case doctrine where evidence at a subsequent trial is substantially

---

[7]At the district court level, the law of the case doctrine applies through its corollary, the mandate rule, which "provides that a lower court on remand must 'implement both the letter and the spirit of the [appellate court's] mandate,' and may not disregard the 'explicit directives' of that court." *Becerra*, 155 F.3d at 753 (citing *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir. 1992)). Avelar has not yet been tried, and his case is not before the court on remand. Because the court concludes that the doctrine of the law of the case does not apply, however, it need not address whether the mandate rule applies to this case.

different than that on the record before the court of appeals." *Izen v. Catalina*, 382 F.3d 566, 572 (5th Cir. 2004) (per curiam) (citing *Matthews*, 312 F.3d at 657); *Becerra*, 155 F.2d at 752-753. In *Rivas* the Fifth Circuit held that, based on the evidentiary record developed at the trial of Rivas and Ibarra, the government had not adduced sufficient evidence to establish reasonable suspicion. *Rivas*, 157 F.3d at 368. In adjudicating Avelar's motion, however, the government has called as a witness the officer who conducted the canine examination of the tractor and car hauler. Officer Gutierrez testified concerning the dog's actions and whether they indicated that narcotics were hidden somewhere on Rivas' vehicle.

Because the evidence adduced at Avelar's suppression hearing differs substantially from that on which the Fifth Circuit based its decision in *Rivas*, the law of the case doctrine does not require that this court grant Avelar's motion to suppress. Accordingly, the court now turns to the merits of Avelar's motion.

III

The government maintains that Avelar lacks standing to challenge the border search of the tractor and car hauler that Rivas was driving.[8]

---

[8]Although the government phrases its argument in terms of "standing," the Supreme Court has clarified that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive

- 8 -

It is clearly established that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978) (citing cases). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment . . . it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id.* (citations omitted). Accordingly, to prevail on his motion to suppress, Avelar must establish that his own Fourth Amendment rights were violated by the challenged search or seizure. *Id.* at 130 n.1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). To do this, he must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to

---

Fourth Amendment law than within that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)).

understandings that are recognized and permitted by society.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 143 n.12).

Avelar relies on *Rivas* to argue that, because the Fifth Circuit has determined that the government did not satisfy its burden of establishing that it had reasonable suspicion to conduct a non-routine border search when the drug canine merely "cast" on Rivas' vehicle, this court is bound to follow the reasoning of *Rivas* and grant his motion. But Avelar has not adduced evidence, or even argued, that he personally had an expectation of privacy in the tractor and car hauler that Rivas was driving or that any such expectation was reasonable. Furthermore, it is undisputed that Avelar was neither the driver nor a passenger in the tractor, or that he was even present at the Los Indios Port of Entry at the time of the search.

Accordingly, the court holds that Avelar has not met his burden of establishing that his own Fourth Amendment rights were violated when U.S. Customs officials searched Rivas' vehicle at the border. The Fifth Circuit's decision in *Rivas* is inapposite, because Rivas *did* have standing to challenge the seizure (as fruit of the poisonous tree) that stemmed from a warrantless, non-routine border search of the vehicle he had driven across the border.

IV

Assuming *arguendo* that Avelar does have Fourth Amendment standing, the court denies Avelar's motion. The government proved during the suppression hearing that U.S. Customs officials had reasonable suspicion to search the tractor and car hauler at the border, which revealed the presence of cocaine and supported the later seizure, pursuant to a search warrant, of 40 kilos of cocaine.

In *Rivas* the Fifth Circuit explained that "[a] stop and search that is not 'routine' requires a 'reasonable suspicion of wrongdoing to pass constitutional muster,'" and it held that drilling into Rivas' car hauler was a non-routine search. *Rivas*, 157 F.3d at 367 (quoting *United States v. Cardenas*, 9 F.3d 1139, 1148 n.3 (5th Cir. 1993)). "Reasonable suspicion of criminal activity must be based upon 'specific facts which, taken together with rational inferences therefrom, reasonably warrant an intrusion.'" *Id.* (citing *Cardenas*, 9 F.3d at 1153). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person' of smuggling contraband." *Id.* (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985)). "In determining whether government agents possessed a reasonable suspicion that criminal activity was occurring, [the court] must consider 'the totality of the particular

circumstances.'" *Id.* (citing Cardenas, 9 F.3d at 1148).[9]

In *Rivas* the Fifth Circuit held that the government did not establish reasonable suspicion, concluding that although a drug canine's "alert" is sufficient to create probable cause for a search, "casting," or a "'weak alert' on its own" is insufficient. *Id.* at 368. In *Rivas* the government did not call Officer Gutierrez as a witness, so the only evidence consisted of the testimony of Officer Lira, who described the canine's reaction as a "cast." *Id.* In the hearing on Avelar's motion, however, the government called Officer Gutierrez to testify. Officer Gutierrez recounted that, after extensive training, he and Bridger had been certified to work together; that they had received their annual certification at least twice before September 1995; and that Bridger ranked among the top drug dogs at the Port of Brownsville. According to Officer

---

[9]It is unclear whether the Fifth Circuit would decide *Rivas* the same way today. *See United States v. Flores-Montano*, 541 U.S. 149, 155 (2004) (holding that "the Government's authority to conduct suspicionless inspections at the border includes the authority to remove, disassemble, and reassemble a vehicle's fuel tank.") & *id.* at 154 n.2 (declining to accept defendant's reliance on *Rivas*). If the government can remove, disassemble, and reassemble a vehicle's fuel tank without the existence of reasonable suspicion, it is possible that *Flores-Montano* would also permit exploratory drilling of the limited nature that occurred here: two small holes, drilled quickly, that did not in any way affect the performance of the car hauler. In *Flores-Montano* the Court expressly refused to address exploratory drilling. Even if this court were free under the law of the case doctrine to decide whether, in the context of a border search, exploratory drilling conducted without reasonable suspicion violated the Fourth Amendment, it need not do so. The government has established the existence of reasonable suspicion, and it is clear that exploratory drilling is permitted when there is reasonable suspicion.

Gutierrez, who has extensive experience as a canine officer, an "alert" occurs when the dog first detects the odor of narcotics and changes its behavior, and a "response" occurs when the dog actually reaches the place where the narcotics are hidden and begins to scratch and bite at the place where he detects the narcotics.[10] A "cast" is a term used to describe the phase between an "alert" and a "response." Officer Gutierrez explained that when narcotics are hidden in high places, the dog cannot reach the "response" phase because he cannot reach the location of the drugs so that he can bite and scratch. Officer Gutierrez testified that he was familiar with the way a drug canine reacts when he detects the odor from narcotics placed in a high location, because before September 1995, approximately four separate times, Bridger detected narcotics hidden high in a vehicle and had "alerted" or "cast" because he could not reach the source. In this case, Officer Gutierrez and Bridger sequentially processed the tractor and car hauler and, when they neared the location where the cocaine was found, Bridger "alerted" by breaking the search pattern and rapidly wagging his tail. When they reached the location of the cocaine, Bridger "cast," by going up on his hind legs and pointing his nose in the air.

Because "a drug dog's alert is sufficient to create probable

---

[10]Drug canines can react passively or aggressively in the presence of narcotics. Bridger reacts aggressively, and Officer Gutierrez was describing how Bridger reacts.

cause for a search," *Rivas*, 157 F.3d at 368 (citing *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (per curiam)), the government established that Bridger's alert provided Officer Lira with reasonable suspicion to drill into the car hauler's beams.[11] Accordingly, the court finds and concludes that Officer Lira had reasonable suspicion to support his search of Rivas' vehicle by drilling into the car hauler. *Rivas,* 157 F.3d at 367 (citing *Cardenas*, 9 F.3d at 1148).

\*   \*   \*

Avelar's June 13, 2007 motion to suppress evidence obtained in warrantless search is denied.

**SO ORDERED.**

July 23, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[11]Additionally, the government has adduced other evidence that would have created reasonable suspicion. The government cites Officer Lira's extensive work experience, the fresh paint over the car hauler and the hydraulic pistons, the double beams, the non-factory welds, the upside down sign, the lack of natural cavities, and the sound test.